# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.                            No.    CV 19-298 WJ/GJF
                                                  CR 17-1358 WJ

MICHAEL RAY SEPULVEDA,

      Defendant-Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion"). CV ECF 2.[1] In the Motion, Defendant advances two theories of ineffective assistance of counsel. First, he alleges that counsel failed to investigate for sentencing purposes certain potential mitigating factors. Second, he alleges that his counsel failed to object at sentencing to certain statements made by the prosecutor and the introduction of information not contained in his Plea Agreement. The United States filed a response [CV ECF 8] ("Response") to which Defendant has replied [CV ECF 11] ("Reply"). Having reviewed the briefing and the record, and otherwise being fully advised, the Court **RECOMMENDS** that the Motion be **DENIED** for the reasons that follow.[2]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Crimes and Charges

On October 31, 2016, Defendant was charged by criminal complaint with violations of:

---

[1] Unless otherwise identified, all docket citations are to CR 17-1358 WJ.

[2] Before issuing this PFRD, the Court considered whether an evidentiary hearing was necessary, as instructed by Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Because the outcome of this Motion turns on matters of law and its recommended disposition requires no further factual development, the Court concluded that no evidentiary hearing was necessary.

(1) 18 U.S.C. § 2422(b) (Enticing a Child to Engage in Unlawful Sexual Activity), (2) 18 U.S.C. §§ 2251(a) & (e) (Enticing a Child to Produce Child Pornography), and (3) 18 U.S.C. § 1470 (Knowingly Transmitting Obscene Material to a Minor).  Compl., ECF 3.  On May 24, 2017, Defendant pleaded guilty to an information charging him with Enticement of a Minor in violation of 18 U.S.C. § 2422(b) and Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2). *See* ECFs 24, 27, 28.  The following factual basis—which Defendant admitted to in his Plea Agreement and reaffirmed on the record at his plea hearing—supported these charges:

> From on or about July 29, 2015, until on or about November 15, 2015, [Defendant] knowingly received child pornography that was sent through the internet. [Defendant] also knowingly persuaded, induced, enticed, and coerced someone [he] knew to be a minor to engage in sexual activity for which [he] could be charged with a criminal offense.  Specifically, [Defendant] knowingly requested the minor produce pornographic images of himself, which constitutes a federal crime under 18 U.S.C. § 2251, and, as a 37-year-old male, unlawfully and intentionally attempted to meet with a child between thirteen to sixteen years of age who is not [his] spouse in order to engage in sexual intercourse, fellatio, or anal intercourse, which is a violation of New Mexico state law under NMSA §§ 30-9-ll(A), (G)(l).

> During the above-referenced period, [Defendant] was the user of the Facebook account bearing username Michael Sepulveda and user ID 100004687305500. [Defendant] began communicating online with someone using Facebook Messenger and [he] knew that the user of the Facebook account with whom [he] was chatting was a minor male.  In order to persuade, induce, entice, and coerce the minor into engaging in unlawful sexual activity with [him], [Defendant] held [himself] out online to be a teenage female, sent the minor male images of female genitalia and heterosexual pornography, had numerous sexually explicit conversations with the minor male during which [he] discussed engaging in sexual activity with the minor, and [he] made arrangements to meet with the minor in order to engage in sexual activity.

> [Defendant] also requested that the minor take sexually explicit photos of himself on several occasions and send them to [him] through Facebook Messenger. Between on or about July 29, 2015, and on or about November 15, 2015, in response to [his] requests to the minor, [Defendant] received five pornographic images of the minor.  The photos depict the penis of a minor male between thirteen and fifteen years old.  [Defendant] acknowledge[d] that these images are sexually explicit and qualify as a lascivious exhibit of the genitals of the minor pursuant to 18 U.S.C. § 2256(2)(A)(v).

> When [he] engaged in the above conduct, [Defendant] was in the District of New Mexico and was using a cell phone to connect to the internet in order to access Facebook and Facebook Messenger. At the time [Defendant] engaged in this conduct, no Facebook servers were located in the State or District of New Mexico. As such, the conversations [he] had with the minor, the images [he] sent, and the pictures that [Defendant] received from the minor male over Facebook Messenger had to have traveled in interstate commerce. Moreover, when [Defendant] asked the minor to send [him] the photos, [Defendant] knew he would send them through the internet.

ECF 27, 5-6 ("Plea Agreement"); *See* Plea Hr'g Tr., ECF 33, 16:1-12, 19:5-14 ("Plea Hearing").[3]

### B. The Plea Agreement

The parties entered into a written Plea Agreement. ECF 27. In relevant part, the Plea Agreement required Defendant to plead guilty to the above-described charges and waive the following rights: (1) to be charged by indictment; (2) to plead not guilty; (3) to have a trial by jury; (4) to confront and cross-examine witnesses and to call witnesses to testify for the defense; and (5) against self-incrimination. *Id*. ¶ 2(a)-(e). In exchange, the parties stipulated pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that "a term of imprisonment within a range of not less than twenty (20) nor more than twenty-five (25) years that is followed by a lifetime term of supervised release" would be appropriate. *Id*. ¶ 14a. Defendant also "agree[d] to pay restitution in the amount of $7,500, for a total of $15,000, to the victims," and that "an unanticipated amount of a restitution order w[ould] not serve as grounds to withdraw [his] guilty plea." *Id*. ¶¶ 16-17. Finally, Defendant also agreed to waive his right to appeal or to seek post-conviction collateral relief on any issue other than ineffective assistance of counsel. *Id*. ¶ 29.

The United States agreed that, "[p]rovided that the [D]efendant fulfills the [D]efendant's obligations as set out [in the Plea Agreement]," it would "not bring additional criminal charges

---

[3] At the sentencing hearing, Judge Johnson adopted without objection the presentence report's factual findings which, among other things, depicted in detail the graphic nature of both the exchanged photographs and the conversations that occurred between Defendant and the victims. *See* Sntc'g Tr., ECF 50, 16:13-16; *see also* ECF 34 ¶¶ 1-27 (Presentence Report).

against the [D]efendant arising out of the facts forming the basis of the present information, including charges under 19 U.S.C. § 2251: Attempted Production of Child Pornography and 18 U.S.C. § 1470: Sending Material to a Minor." *Id.* ¶ 30. The parties otherwise reserved their rights to litigate any other aspect of the Defendant's sentence including the applicability of any other sentencing guideline provision. *Id.* ¶ 10.

Importantly, the Plea Agreement featured a section entitled "VOLUNTARY PLEA," which because of its centrality to the outcome of this Motion is worth quoting in full:

> The [D]efendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats or *promises* (other than the promises set forth in this plea agreement and any addenda). The [D]efendant also represents that the [D]efendant is pleading guilty because the [D]efendant is in fact guilty.

*Id.* ¶ 32 (emphasis added).

As part of the Plea Agreement, Defendant also acknowledged that the "agreement ha[d] been read to [him]" and that he had "carefully discussed every part of it with [his] attorney." *Id.* at 13 (signature block). He further attested:

> I understand the terms of this agreement, and *I voluntarily agree to those terms*. My attorney has advised me of my rights, of possible defenses, of the elements of the offense(s) for which he is charged, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guideline provisions, and of the consequences of entering into this agreement. *No promises or inducements have been given to me other than those contained in this agreement*. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

*Id.* (emphasis added).

Defendant's counsel, Mario Esparza, also attested that:

> I am the attorney for MICHAEL RAY SEPULVEDA. *I have carefully discussed every part of this agreement with my client*. Further, I have fully advised my client of his rights, of possible defenses, of the elements of the offense(s) for which he is charged, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this

4

agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

*Id*. (emphasis added).

### C. The Plea Hearing

Defendant pleaded guilty pursuant to this Plea Agreement on May 24, 2017. *See* Clerk's Mins., ECF. 28, and Plea Hr'g Tr., ECF. 33. During the plea colloquy, during which Defendant answered the Court's questions under oath and subject to the penalty of perjury, he admitted that he was born on April 25, 1978. Plea Hr'g Tr. 6:21-22. He denied being under the influence of any drugs or alcohol, except for prescribed medication. *Id*. at 6:23-25. Defendant informed the Court that he was currently taking medication for bipolar disorder, schizophrenia, seizures, and HIV. *Id*. at 7:1-5. He affirmed that nothing about the medication nor the conditions for which he was taking them interfered with his understanding of the proceedings. *Id*. at 7:6-10. He also relayed that, in addition to the conditions already identified, he was receiving treatment for neuropathy and seizures, and he affirmed that this treatment did not interfere with his understanding of the proceedings. *Id*. at 7:11-22. Defendant then attested that he was not forced or threatened in any way to plead guilty. *Id*. at 7:23-8:2.

Defendant affirmed that he was waiving or giving up, among other things, the right to proceed before a district judge, the right to be charged by a grand jury, the right to go to trial, and all the rights he would have at trial, in exchange for his plea deal. *Id*. at 8:3-9:13. The Court then formally advised Defendant of the minimum and maximum penalties that each of the two charges carried. *Id*. at 9:17-11:1. Defendant affirmed that he and his counsel, Mr. Esparza, had discussed the facts, circumstances, and any possible defenses regarding these charges, and Defendant admitted he was completely satisfied with the advice and representation he had received. *Id*. at 11:2-8.

The Court then focused on the Plea Agreement. Of importance to the instant Motion is the following dialogue:

> THE COURT: The last document that I've been given for you that I want to go over with you is your plea agreement. Yours is 13 pages long. On page, on the final page your type written name appears, there's a signature above it, did you sign your plea agreement?
>
> DEFENDANT SEPULVEDA: Yes, your Honor.
>
> THE COURT: Before you signed it, did you read it from beginning to end?
>
> DEFENDANT SEPULVEDA: Yes, your Honor.
>
> THE COURT: Before you signed it, did Mr. Esparza explain it to you, explain to you what it really means, and then answer any questions about it that you had?
>
> DEFENDANT SEPULVEDA: Yes, your Honor.
>
> THE COURT: Mr. Sepulveda, I don't think you're a lawyer but—but if you are, I'd be surprised. I think somebody would have told me. But nonetheless, did you seek to the best of your ability before you signed this plea agreement to understand every term and condition that it contains?
>
> DEFENDANT SEPULVEDA: Yes, your Honor.
>
> THE COURT: Okay. Are there any other questions about your plea agreement that you would like to ask Mr. Esparza today before we proceed any further?
>
> DEFENDANT SEPULVEDA: No, your Honor.
>
> THE COURT: Mr.—oh, and did you sign your plea agreement voluntarily?
>
> DEFENDANT SEPULVEDA: Yes, your Honor.

*Id*. at 11:9-12:9. Mr. Esparza then summarized—with the help of the Court's supplementation of information regarding the required restitution—the important provisions of the Plea Agreement, i.e., the agreement that the sentencing range will be between 20-25 years and Defendant's ability to present mitigating evidence at sentencing. *Id*. at 12:10-14:17. Defendant confirmed that Mr. Esparza's summary, further informed by the Court's own additions, mirrored his understanding of

the agreement. *Id*. at 14:18-21. The Court then reiterated the important terms: 20-25 years in prison, followed by a lifetime of supervised release, along with restitution and the possibility of a special penalty. Defendant again affirmed his understanding of these terms. *Id*. at 16:1-21. The Court finished this discussion by informing Defendant, in the unlikely event the sentencing judge rejects the Plea Agreement, of his options to withdraw his guilty plea and go to trial, maintain his guilty plea and accept the sentence imposed within the minimum and maximums, or withdraw his guilty plea and attempt to renegotiate a new plea agreement. *Id*. at 17:2-20.

After Defendant pleaded guilty to both counts, *id*. at 19:11-20, and affirmed the factual basis set forth in Plea Agreement as true, *id*. at 19:12-14, the Court accepted Defendant's guilty plea, finding that:

> [Defendant was] competent and capable of entering an informed plea, [he was] aware of the nature of the two charges against [him] and the consequences of [his] plea, [his] plea [was] knowing and voluntary and supported by sufficient facts.

*Id.* at 19:22-20:1.

Following the plea hearing, the Court received a letter from Defendant on June 2, 2017. *See* ECF 30. The letter, addressed to defense counsel Mario Esparza, stated that its purpose was to "memorialize [Defendant's] growing concern with regard to the handling of [his] case. *Id*. at 1. In the letter, Defendant "reiterate[d] [his] profound interest and desire to avoid wasting governing resources, and to enter into an equitable plea deal," but "not at the expense of [his] rights." *Id*. He requested (1) "to be moved to a new facility," (2) "copies of plea deal along with the discovery," and to (3) "withdraw [his] plea deal in hopes for a better deal, one without fines . . . restitution . . . [and] lifetime probation." *Id.* at 1-2.

Defendant further stated that he had not "review[ed] the terms with [Mr. Esparza]" or "the legal alternatives at [his] disposal." *Id*. at 2. Defendant asserted that Mr. Esparza "did not read

[the plea deal] to [him]" nor allow him to "read it for [himself]." *Id.* Defendant then claimed that he "had no idea on the fines or length of probation." *Id.* He finished by requesting that Mr. Esparza provide him with his "legal written opinion regarding possible defenses . . . based on [his] review of the evidence." *Id.* at 3.

On June 5, 2017, Mr. Esparza filed a motion to withdraw as defense counsel. *See* ECF 29.[4] Mr. Esparza cited, as illustrated by the letter, ongoing friction between Defendant and himself. *Id.* The Court granted the motion, [ECF 31], and appointed John L. Granberg as defense counsel.

### D. The Presentence Report

On December 4, 2017, the Probation Office disclosed the presentence report ("PSR"). The PSR noted that, had Defendant proceeded to trial and been convicted on all counts in the information, his adjusted offense of level would have been 44. PSR ¶¶ 36-70. This calculation accounted for a multi-count adjustment, a Chapter 4 Enhancement, and did not include a reduction for acceptance of responsibility. PSR ¶ 111. With an offense of level of 44 (the sentencing table ends at 43) and a criminal history category III, Defendant's guideline imprisonment range would have been life. *Id.* As the PSR demonstrated, Defendant significantly reduced his exposure to incarceration by entering into the Plea Agreement. *Id.*

Importantly, the report also discussed Defendant's mental and emotional health, as well as his substance abuse. PSR ¶¶ 99-102. As reflected in the report, Defendant revealed that at the age of eight or nine he was sexually abused by his fifteen-year-old cousin and, at the age of twelve, he was sexually abused by another cousin. *Id.* ¶ 99. According to Defendant, he neither reported the abuse nor sought mental health treatment. *Id.* But he did state that this abuse resulted in him attending an anger management program in 2004 while he was in custody. *Id.*

---

[4] The discrepancy in docket numbers between Defendant's letter, ECF 30, and Mr. Esparza's subsequent motion, ECF 29, is the result of the Court taking five days to scan and docket the letter.

Defendant further advised that in 2016, while under the influence of methamphetamine, he debated driving off a cliff and that, while not currently suicidal, he is depressed. *Id.* ¶ 100. Defendant indicated that he has been taking medication for this depression since 2005 and that he has been advised that his depression is hereditary. *Id.* ¶ 101. Defendant asserted that he has also been diagnosed with Bi-Polar Disorder, Schizophrenia, Post-Traumatic Stress Disorder (PTSD), Attention Deficit Hyperactivity Disorder (ADHD), and anxiety. He reported a current prescription for the antidepressant venlafaxine. *Id.*[5] Defendant expressed a desire to receive treatment for his mental health problems. *Id.*

Lastly, in a confidential memorandum filed the same day as the PSR, the probation officer informed the Court that Defendant had admitted during the presentence interview to have been diagnosed with Human Immunodeficiency Virus ("HIV") in 2006 while in the custody of the California Department of Corrections. ECF 36. Defendant also advised that he takes several medications to treat his HIV. *Id.*

### E. The Sentencing Filings and Hearing

Neither party filed objections to the PSR, but both filed sentencing memoranda urging the Court to impose a sentence at either end of the stipulated 20-25 year range. The Government informed the Court that it believed a 25-year sentence was warranted, given that Defendant deceived his victims and made sexual contact with one, all while knowing he suffered from HIV. *See* ECF 40. For his part, defense counsel filed a sentencing memorandum in which he argued that a 20-year sentence would be appropriate if Defendant could be placed at USP Marion, which reportedly has an intensive sex offender treatment program. *See* ECF 43. He contended that the combination of Defendant's lack of sexual abuse and sex offender counseling, the sexual abuse he

---

[5] Defendant did not produce any healthcare records substantiating these diagnoses. He maintains that the records are at various unknown public health care centers in California. *Id.* at ¶ 101.

experienced as a young boy, and his failure to receive mental health treatment should persuade the

Court to arrive at a sentence of 20 years. *See id.*, *passim.*

At the sentencing hearing, defense counsel confirmed that he had no objections to the PSR.

Sntc'g Tr., ECF 50, 2:13-20. The Court then focused on the Plea Agreement. The United States

argued for imposition of the maximum range of imprisonment, 25 years under the agreement.

Specifically, it argued that:

> Th[e] defendant used social media to seek out sexual encounters with teenage boys.
> He used deception in this case and did it in a particularly egregious way. He held a
> photo out of his daughter as being himself or being the person who was using the
> profile, and masquerading as his daughter in sending pornographic images from an
> account he purported to be her, he was able to obtain pornographic images of the
> children. He sent pornographic images to them, and he was—he successfully met
> with, I believe—I say two of the three victims identified in this case. There was a
> third meeting, but it appears that the purpose of that was to confront Mr. Sepulveda,
> so I didn't count that against him.

*Id*. at 7:6-21. Additionally, the United States discussed Defendant's prior sex offense conviction

in California where he "worked as a recreational leader," which allowed him to "meet a 14-year-

old boy and engage in sexual contact with [him]." *Id*. at 7:24-8:3.

In his oral argument, defense counsel essentially repeated the themes of his sentencing

memorandum, offered a mitigating explanation of his client's behavior, and asked for a sentence

of 20 years. *Id.* at 12:1-15:3. Notably, defense counsel argued that Defendant, a victim of sexual

assault who never received counseling, perpetrated the crimes at least in part as a result of never

receiving the appropriate counseling. *Id*. at 16:6-24. In addition, defense counsel maintained that

Defendant was "not taking his medications when he was contacting the[] boys over social media,

but he was also taking meth," *id*. 13:18-23, and that "it would be unfair to sentence [Defendant] to

the high end, given that he never received [sex offender] counseling." *Id.* at 14:12-16.

When it was his turn to speak, Defendant told the Court "I deeply regret and accept the full

responsibility for my inappropriate conduct. I am truly sorry for my actions. I know what I did was wrong. I suffer from PTSD and depression, bipolar and manic-depressive disorder, along with an addiction to methamphetamines." *Id*. at 15:6-11. He went on to say "I am not a bad person, I just made some bad choices, and I pray someday to be forgiven. I apologize to you, Your Honor, to the Court, to my victims and their families, for doing—for my family, for putting them all through this, I am truly sorry. I never thought I could do or would do something like this to anyone, knowing how it feels." *Id*. at 15:12-16:1. Defendant did, however, blame his conduct on, among other things, not taking his medication during the time of the criminal conduct. *Id*. at 15-16, *passim*. Defendant finished by stating: "I am contrite, remorseful, and devastated by the harm that my actions have caused others. If I could take it all back, I would. I wish I could undo everything that has been done." *Id*. at 16:6-11.

The Court accepted the Plea Agreement and then sentenced Defendant to 25 years imprisonment followed by a lifetime of supervised release. *Id*. at 18-20. When discussing the special conditions of supervision, the Court stated that:

> these conditions are imposed *based on your mental history*, which includes your being previously diagnosed with bipolar disorder, schizophrenia, post-traumatic stress disorder, attention deficit, hyperactivity disorder, and anxiety. This—these conditions — the mental health treatment condition, rather, is meant to provide you with mental health treatment, which you have not previously received. And your mental history also includes treatment for mental health issues for which supervision and the use of prescribed medications may be beneficial.

*Id*. at 22:14-24 (emphasis added). The Court filed its judgment on February 13, 2018. *See* ECF 46. Even though he waived his right to do so, Defendant filed a direct appeal to the Tenth Circuit. *See* ECF 45.[6] On April 1, 2019, Defendant filed the instant § 2255 motion.

---

[6] On appeal, Defendant conceded that his appeal waiver was enforceable, and the matter was terminated. *See United States v. Sepulveda*, 721 F. App'x 835 (10th Cir. 2018) (unpublished), also available at ECF 61-1 (upholding and enforcing Defendant's waiver of his right to file such an appeal).

## II. DEFENDANT'S CLAIMS

In his motion, Defendant asserts two discrete grounds for relief:

1. His appointed counsel, Mario Esparza, was ineffective for making unfulfilled promises about conducting a mitigation investigation that induced Defendant to plead guilty. *See* Mot. 18.[7]

2. Defendant's second claim for relief stems from the sentencing hearing: (a) the Government breached the Plea Agreement by not limiting its argument to the facts and admissions contained in the Plea Agreement and (b) his sentencing counsel, John Granberg, was ineffective for not objecting to these additional arguments. *See* Mot. 20, 23. While it appears Defendant is arguing two separate claims, Defendant's waiver of his appeal rights limited his right to collaterally challenge only to ineffective assistance claims. Plea Agreement ¶ 29. Because the Tenth Circuit has already upheld this waiver, *see supra* note 6, the Court will analyze Defendant's breach of Plea Agreement claim as an ineffective assistance challenge.[8]

For relief, Defendant requests that he be allowed to withdraw his guilty plea or, in the alternative, be re-sentenced by a different judge. *See* Mot. 28.

## III. GOVERNMENT'S RESPONSE AND DEFENDANT'S REPLY

The United States asserts that Defendant's claims are without merit. *See* Resp. 5-9. The United States contends that Defendant's ineffective assistance claims fail because he cannot show that Mario Esparza's performance during plea negations nor John Granberg's performance at the sentencing hearing were deficient. *Id.*, *passim*. Similarly, the United States argues that, with

---

[7] In the interests of clarity, the Court has used the pagination appearing in CM/ECF rather than Defendant's, as Defendant's filings include unnumbered prefatory pages.

[8] In addition, Defendant also references a due process right to "rebut[] derogatory information demonstrably relied upon by the Sentencing Judge." Mot. 21. The Court, however, will not address such a claim, as it is not related to an ineffective assistance of counsel claim—the only claim for which Defendant can make a collateral attack. Plea Agmt. ¶ 29; *see supra* note 6. Therefore, the Court will confine its analysis of Defendant's claims to only those relating to ineffective assistance of counsel.

respect to the Plea Agreement, Defendant cannot establish prejudice under the *Strickland* standard because the factual circumstances surrounding the agreement demonstrate that Defendant would not have gone to trial. *See id.* at 10-11. The United States further emphasizes that Defendant cannot demonstrate prejudice at the sentencing hearing because there is no legal basis that requires the United States to confine its arguments to what was contained in the Plea Agreement. Resp. 16. Lastly, the United States maintains that Defendant's breach of Plea Agreement argument must fail because the agreement contained no limitation on the information or arguments that could be presented to the sentencing judge. *Id.* at 13.

In reply, Defendant attempts to introduce new claims, attacks the prosecution, and argues incoherent theories based on what appears to be a misapprehension of statements made during the sentencing hearing. *See* Reply, *passim.*[9]

## IV. LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct [his] sentence," when, *inter alia*, "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). To state a cognizable claim for relief under Section 2255, a defendant must allege that the "error constituted a fundamental defect which inherently result[ed] in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted)

---

[9] In his Reply, Defendant introduces three completely new—and irrelevant—claims. Specifically, he claims his first appointed counsel, Assistant Federal Public Defender Dennis Candelaria, was ineffective for not investigating his claim that—after he committed the crimes to which he plead guilty—he was then "blackmailed" by the victim to continue his sexually predatory relationship. As Defendant fails to explain why his attorney was required to investigate such an *after-the-fact* blackmailing—or how it "prejudiced [him] by causing him to plead guilty rather than go to trial," *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)—this Court declines to further address such a claim. Defendant also claims that his Fourth Amendment and Miranda rights were violated and that, given a discrepancy between the Government and PSR's sentencing estimates, he was illegally sentenced. These claims, however, will not be addressed because Defendant explicitly waived all of his collateral challenge rights, except for claims related to ineffective assistance of counsel.

(superseded by statute on other grounds). A court must presume "that the proceedings leading to the conviction were correct." *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

Because the Defendant is pro se, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## V. ANALYSIS

The Court will consider in turn Defendant's two grounds for relief. First, the Court will examine Defendant's criticism of Mario Esparza during the plea negotiations. Second, the Court will address Defendant's contentions that, (a) John Granberg was ineffective for failing to object to the United States' introduction of facts not contained in the Plea Agreement, and (b) the United States breached the Plea Agreement by introducing facts not contained in it.

### A. Defendant Voluntarily Entered into Plea Agreement

Defendant argues that his appointed counsel, Mario Esparza, induced him into pleading guilty by promising to conduct an investigation to uncover mitigating facts that could be presented to the sentencing judge. Specifically, Defendant alleges that Mr. Esparza promised to investigate his "upbringing, background and character, obtain records of [his] history of mental illness and abuse, interview family members, witnesses, pursue a motion to determine competency of [D]efendant, [and] seek a psychological assessment pursuant to the provisions of 18 USC § 4247(b) and (c)." Mot. 18.[10]

---

[10] Defendant does not claim that he was incompetent or insane. Instead, he argues that he was a "women trapped inside of a mans [sic] body," Mot. 19, which of course does not bear on the culpability of Defendant's conduct with a *minor*. Therefore, in analyzing Defendant's instant claims, the Court disregards any argument Defendant makes relating to his gender identity.

### 1. Legal Standard

The Sixth Amendment to the United States Constitution guarantees Defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). And the same two-part standard, i.e., that counsel's performance fell below an objective standard of reasonableness and the defendant suffered prejudice as a result of the deficient performance, applies equally to ineffective-assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To establish the first prong, a defendant must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 690). Overcoming this burden requires a defendant to establish that the "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

In order to satisfy the "prejudice" requirement in the context of guilty pleas, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59. "[M]ere allegations that [the defendant] would have insisted on trial but for his trial counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002) (quotations omitted).

### 2. Analysis of Mr. Esparza's Performance

#### a. Inducement

Defendant grounds his claim that Mr. Esparza provided deficient representation in an

alleged promise to conduct an investigation into possible mitigating evidence to present at sentencing. Defendant asserts that this promise induced him to plead guilty. Mot. 18. According to Defendant, Mr. Esparza never began an investigation but instead quit shortly after the plea hearing. Defendant supports his allegations with two letters, one attached to his Motion as Exhibit B, and the other docketed on June 2, 2017, [ECF 30]. Additionally, Defendant points to statements by Mr. Esparza at the plea hearing as proof that the promise was made. Mot. 19.

To begin, "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). But the plea-bargaining process and its advantages of efficiency and certainty remain "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Therefore, as a starting point, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *United States v. Scott,* 630 F. App'x 745, 747 (10th Cir. 2015) (unpublished) (quoting *Blackledge*, 431 U.S. at 73-74). "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Lasiter v. Thomas*, 89 F.3d 699, 702 (10th Cir. 1996) (quoting *Blackledge*, 431 U.S. at 74).

With this guidance, the Court must analyze the whole record in conjunction with the plea hearing to determine the credibility of Defendant's assertion that Mr. Esparza induced him to enter into the Plea Agreement. Looking to the Plea Agreement, two separate sections address voluntariness. First, paragraph 32, entitled "Voluntary Plea," states that "[t]he [D]efendant agrees

and represents that this plea of guilty is freely and voluntarily made and is *not the result of force, threats or promises* (other than the promises set forth in this plea agreement and any addenda)." Plea Agmt. ¶ 32 (emphasis added). Also, Defendant's signature block states that, among other things, "*[n]o promises or inducements* have been given to me other than those contained in this agreement." Plea Agmt. at 13 (emphasis added). Finally, Defendant ratified that the "agreement has been read to me in the language I understand best, and I have carefully discussed every part of it with my attorney[]" and that "I am fully satisfied with the representation of my attorney in this matter." *Id.*

The plea colloquy further affirmed that the plea was not the product of an inducement. For starters, Defendant attested that nobody "forced [him] to plead guilty or [was] [] threaten[ing] [him] to get [him] to plead guilty." Plea Hr'g 7:23-8:1. Defendant further affirmed that he "read [the Plea Agreement] from beginning to end," that Mr. Esparza "explain[ed] [it] to [him]," that he "understood every term and condition that it contain[ed]," and that he "sign[ed] [the] plea agreement voluntarily." *Id.* at 11:15-12:9. And the Court found that he was "competent and capable of entering an informed plea, [he] was aware of the nature of the two charges against [him] and the consequences of [his] plea, [and] [his] plea [was] knowing and voluntary and supported by sufficient facts." *Id.* at 19:22-20:2.

Against this record, Defendant's evidence supporting this allegation is "wholly incredible" and, in fact, detracts from his claim. First, Mr. Esparza never stated on the record that he promised to conduct an investigation. He did express, however, that the Plea Agreement lessened Defendant's "exposure considerably and gives him an opportunity to offer in mitigation facts the Sentencing Court will consider." *Id.* at 12:18-24. This statement falls well short of proving that a plea-inducing promise to investigate was ever made. Similarly, Defendant's letter addressed to

Mr. Esparza says nothing about an alleged promise. *See* ECF 30.[11]

Defendant's second letter, attached as Exhibit B, also fails to gain any meaningful traction. For one, the letter is neither in the record nor dated. *See generally* Mot. at 32. It also makes no mention of Mr. Esparza promising—in exchange for a guilty plea—to investigate Defendant's background. *Id.*[12] The closest Defendant comes to demonstrating involuntariness in Exhibit B stems from his claim that he thought the agreement "was for 14 years but it turned out to be 20-25 years." Mot. 32 (Ex. B.). However, the record directly refutes this contention. *See* Plea Hr'g Tr. 16:13-18 (The Court: "[Y]ou are going to be sentenced to between 20 and 25 years in prison and then a lifetime of supervised release. Do you understand that, those very important terms?" Defendant: "Yes, your Honor."). Accordingly, Exhibit B offers Defendant no help in terms of proving that Mr. Esparza induced him to plead guilty or that his plea of guilty was involuntarily given.

In total, the record directly contradicts Defendant's claim that Mr. Esparza ever promised to conduct an investigation into mitigating facts. Without any such promise—let alone one that "induced [a guilty plea]" by "depriv[ing] it of the character of a voluntary act," *Machibroda*, 368 U.S. at 49—it cannot be said that Defendant involuntarily entered into the Plea Agreement. Therefore, Mr. Esparza's performance did not amount to incompetence under prevailing

---

[11] Defendant's letter does, however, allege that he did not review the terms of the Plea Agreement or discuss its terms with Mr. Esparza and then requests that he be allowed to "withdraw [his] Plea Deal [sic] in hopes for a better deal" that excluded fines, restitution and lifetime probation. ECF 30 at 1-2. But these allegations are directly contradicted by the plea colloquy—during which Defendant affirmed under oath that he (1) reviewed the terms of the Plea Agreement with counsel, (2) read the agreement from beginning to end, (3) personally understood the terms of the agreement, and (4) understood the possibility that he would receive fines, restitution, and lifetime supervision. Plea Hr'g 7:23-8:1, 14:1-16:22. While it appears that Defendant had buyer's remorse, this desire for a better deal would not have been a "fair and just" reason under Fed. R. Crim. P. 11(d)(A)(2) to withdraw a guilty plea.

[12] Defendant does mention in the exhibit that, in reference to ECF 30 (the docketed letter), he requested that Mr. Esparza withdraw his guilty plea. *Id.* But Defendant does not argue ineffective assistance on account of Mr. Esparza failing to file a motion to withdraw the Plea Agreement, making the statement wholly irrelevant.

professional norms.

### b. Failure to Investigate

Notwithstanding the Court's conclusion that Mr. Esparza never promised to conduct an investigation or induced Defendant to plead guilty, the Court will still address whether Mr. Esparza was deficient for allegedly failing to conduct an investigation into Defendant's background. [13] Supreme Court precedent helps resolve this issue.

In *Wiggins v. Smith,* 539 U.S. 510 (2003), defense counsel failed to investigate and present mitigating evidence of the defendant's dysfunctional family and social history, despite information contained in the pre-sentence investigation report and social service records. *Id*. at 516, 534. The Court held that, based on a "reasonableness in all the circumstances" approach, defense counsel's failure to investigate the defendant's life history established the deficiency prong because counsel (1) abandoned their investigation after "having acquired only rudimentary knowledge of [defendant's] history from a narrow set of sources," (2) "uncovered no evidence in their investigation to suggest that . . . further investigation would have been fruitless," and (3) the failure to investigate "resulted from inattention, not strategic judgment." *Id.* at 521–27. Similarly, the Supreme Court has also stated that counsel may not ignore "pertinent avenues of investigation." *Porter v. McCollum*, 558 U.S. 30, 40 (2009). Nor can they ignore even a single, particularly promising investigation lead. *Rompilla v. Beard,* 545 U.S. 374, 383-84 (2005). Importantly, all

---

[13]   In Count I, Defendant specifies only that Mr. Esparza, his second appointed counsel, failed to conduct an investigation into mitigation evidence. Neither his first nor third appointed counsel are individually accused of failing to investigate. *See* Mot. 18-20. Defendant does, however, make a blanket statement at the end of Claim I that "his attorneys failed to act[.]" *Id*. at 20. Although the Court must liberally construe Defendant's Motion, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991), the Court is not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual assertions. *Id*. Therefore, the Court constrains its analysis of whether counsel failed to investigate only to Mr. Esparza. And it will note that Mr. Granberg, Defendant's third appointed counsel, presented the very evidence Defendant considered so "potentially powerful," i.e., mental health diagnoses and history of sexual abuse. *See* Section V(A)(3); ECF 43 (Reply to United States" Sentencing Memorandum); *see also* Sntc'g Tr., 12:1-15:3.

three cases addressed the deficiency prong in the context of sentencing in a death penalty case.

Defendant relies on these three cases to establish that, when Mr. Esparza allegedly quit, he violated the deficiency prong.  But his reliance is misplaced.  *Wiggins, Porter,* and *Rompilla*—notably all capital cases—dealt with deficiencies during the investigative process and well after conviction. The record before the Court paints a completely different picture.  To illustrate, Defendant's docketed letter, ECF 30, postmarked two days after the plea colloquy, triggered Mr. Esparza's motion to withdraw—he did not quit.  *See* ECF 28 (Clerk's Minutes for Plea Hearing held on May 24, 2017); *see also* ECF 30 at 5 (envelope postmarked May 26, 2017).   In fact, Defendant himself undermined the attorney-client relationship—and thus foreclosed any possibility of an investigation being conducted by Mr. Esparza—when he wrote that letter to "memorialize [his] growing concern with regard to the handling of [his] case in [Mr. Esparza's] capacity as defense counsel."  ECF 30 at 1.  Mr. Esparza moved to withdraw because the letter "irrevocably damaged the attorney-client relationship to the point where defense counsel [could] no longer represent the defendant" and he "believe[d] it [was] in the Defendant's best interest that the Defendant be appointed a new counsel to represent him at sentencing and on appeal."  ECF 29.

Under these circumstances, and with sentencing not occurring for another approximately eight months, it was entirely reasonable for Mr. Esparza to withdraw as defense counsel.  *See* ECFs 31 (order granting withdrawal filed on 6/19/2017), 32 (new CJA appointment made on 6/20/17), 44 (Clerk's Minutes for Sentencing Hearing held on 2/5/2018).  Thus, there is no comparison between Mr. Esparza's altogether justified withdrawal and the failure to investigate claims presented in *Wiggins*, *Porter*, and *Rompilla*.

c.  Prejudice

Even though Defendant's contention that a promise to investigate induced him to enter into

the Plea Agreement is wholly incredible, the Court will assume *arguendo* that it was made. And the Court will further indulge the assumption that Mr. Esparza failed to conduct any sort of investigation. Nonetheless, Defendant has suffered no prejudice because he has neither proved nor alleged that, but for Mr. Esparza's unfulfilled promise, Defendant would have gone to trial.

The prejudice prong requires Defendant to "affirmatively prove" prejudice. *Strickland*, 466 U.S. at 693. Defendant must prove that "the error "prejudiced" [him] by causing him to plead guilty rather than go to trial[.]" *Hill*, 474 U.S. at 59. At this juncture, Defendant's claim "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Id*. "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Id*.

According to Defendant, his "dire upbringing and history of serious mental disorders, thinking he is a woman trapped inside of a mans [sic] body and thus being a transexual [sic] female, formed the Crux [sic] of Mitigation [sic] evidence"—evidence that counsel allegedly failed to introduce at sentencing, despite promising to do so. Mot. 19. But nothing in Defendant's Motion, nor in his submitted "evidence," demonstrates that he would have gone to trial had the promise not been made.

To the contrary, Defendant argues only that defense counsel was deficient because the mitigating evidence would have resulted in a 20-year sentence, and not the 25 years that he ultimately received. But if Defendant rejected the Plea Agreement, his exposure would have increased exponentially—potentially subjecting him to life in prison. *See* PSR ¶ 110 (recommended range of 360 months to life imprisonment); Plea Agreement ¶ 30 (stating that "the United States agrees not to bring additional criminal charges against the defendant arising out of the facts forming the basis of the present Information, including charges under 18 U.S.C. § 2251:

Attempted Production of Child Pornography and 18 U.S.C. § 1470: Sending Obscene Material to a Minor"); 18 U.S.C. § 2251 (carrying a mandatory minimum of 15 years imprisonment); 18 U.S.C. § 2260A (additional 10-year consecutive sentence for sex offenders); 18 U.S.C. § 2422(b) ("imprisonment not less than 10 years or for life.").  And, had he gone to trial, the facts alleged in the Complaint, admitted to by Defendant at the Plea Hearing, and chronicled in the presentence report make an acquittal at trial a virtual impossibility.  *See generally* ECF 3 (Complaint); Plea Hr'g Tr., 9:1-18:25; Sntc'g Tr., 2:13-20 (no objection to presentence report); Mot. 14 (admitting to the relationship with the underage male victim); *see also Miller v. Champion*, 262 F.3d 1066, 1075 (10th Cir. 2001) (affirming the consideration of the strength of the evidence against the defendant in connection with the prejudice prong).

Lastly, the mitigating evidence that Defendant considered so "powerful" was argued by Mr. Granberg in Defendant's Reply to the Government's Sentencing Memoranda as well as during the sentencing colloquy.  *See* ECF 43, Reply to USA Sentencing Memorandum (arguing Defendant never received sex abuse or sex offender counseling); Sntc'g Tr., 12:1-15:3 (discussing Defendant's history of mental illness and sexual abuse).  But it does not stop there; the presentence report also contained the mitigating evidence and the sentencing judge directly considered it on the record.  *See* PSR ¶¶ 99-102; *see also* Sntc'g Tr., 22:14-21 ("These conditions are imposed based on your mental history[.]").  Thus, the record demonstrates that all of the mitigating evidence that Defendant alleges Mario Esparza failed to uncover and dig up *was presented to the Court anyway*.

To finish, the only statements Defendant advances in his Motion that even hint at a desire to go to trial sound in desperation for a better deal, *see* ECF 30 at 1-2 ("I respectfully request to withdraw my Plea Deal in hopes for a better deal"), or appear in a self-serving letter, Mot. 32, Ex.

B ("I had wrote a letter [referring to ECF 30] to Mario Esparza telling him that I wanted to withdraw my plea").  Considered separately or together, none of these statements demonstrate an actual desire to proceed before a jury.[14]

Consequently, because Defendant has not met his burden of showing that he would have rejected the plea offer and proceeded to trial, he cannot show prejudice.  Thus, this Court recommends that the claim of ineffective assistance relating to Mr. Esparza be dismissed.

**B.  No Violation Entitling Defendant to Relief Occurred at Sentencing Hearing**

Defendant maintains that the United States breached the Plea Agreement when it offered additional facts not contained in the Plea Agreement to support its position that Defendant should receive 25 years imprisonment, the high end of the agreed-upon range.  Mot. 8.  Defendant further alleges that his sentencing counsel, John Granberg, was ineffective for not objecting to these facts.  *Id*.  Finally, Defendant takes issue with his counsel's failure to object to statements made by the sentencing judge during the proceeding.  *Id*.

*1.  Legal Standards*

a.  Plea Agreement

"General principles of contract law define the content and scope of the government's obligations under a plea agreement."  *United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007). Courts "look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea."  *Id*.  A court must "evaluate the record as a whole to ascertain whether the government complied with its promise."  *Id*.

---

[14] It should also be noted that, in addition to Ex. B, Defendant maintains that he sent another letter, Mot. 30 (self-titled Ex. A), allegedly dated January 8, 2017, that demonstrates his desire to proceed to trial.  Not only is this letter absent from the criminal docket and without a date stamp, but the letter nowhere contains any expression of Defendant's desire to proceed to trial.  *See* Mot. 30.

b. Sixth Amendment

Supreme Court precedents "establish that there exists a right to counsel during sentencing in both noncapital and capital cases." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (internal citations omitted). "Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because any amount of [additional] jail time has Sixth Amendment significance." *Id.* (internal quotation marks and citation omitted; brackets in original).

2. *The United States Did Not Breach the Plea Agreement*

Defendant argues that the following statements made by the prosecutor during the sentencing hearing were not only untrue, but also violated the Plea Agreement, thus making his attorney's failure to object to them a constitutional violation:

> Th[e] defendant used social media to seek out sexual encounters with teenage boys. He used deception in this case and did it in a particularly egregious way. He held a photo out of his daughter as being himself or being the person who was using the profile, and masquerading as his daughter in sending pornographic images from an account he purported to be her, he was able to obtain pornographic images of the children. He sent pornographic images to them, and he was—he successfully met with, I believe—I say two of the three victims identified in this case. There was a third meeting, but it appears that the purpose of that was to confront Mr. Sepulveda, so I didn't count that against him.

Mot. 24; *see also* Sntc'g Tr.,7:6-21. Specifically, although all of this information is contained within the presentence report—which Defendant reviewed and did not object to—Defendant nevertheless asserts that he never stipulated to "deceptively h[olding] out a photo of his daughter as being himself to lure in all sorts of teenage boys so he could have sex with them." Mot. at 25. Moreover, Defendant argues that, since his charges relate to only one victim, the prosecutor inappropriately discussed uncharged conduct that related to two others. *Id.* Defendant also contends that the prosecutor's reference to Defendant engaging or trying to engage in the criminal

acts while afflicted with HIV was misleading and a breach of the Plea Agreement. *Id*. at 21.

Lastly, Defendant asserts that the Government was required to establish that he was in fact a sexual

predator. These arguments are without merit.

To begin, there is nothing in the Plea Agreement that limits either party from introducing

or using additional facts for the purpose of sentencing. *See generally* ECF 27. On the contrary,

paragraph 10 states:

> The United States hereby expressly reserves the right to make known to the United States Probation Office and the Court, for inclusion in the presentence report prepared pursuant to Federal Rule of Criminal Procedure 32, any information that the United States believes may be helpful to the Court, including but not limited to information about any relevant conduct under USSG § 1B1.3.

ECF 27 ¶ 10. Here, Federal Rule of Criminal Procedure 32 required the probation office to conduct

a presentence investigation and submit a report to the Court that included "information that

assesses any financial, social, psychological, and medical impact on *any victim*," along with "*any*

*other information* that the court requires, including information relevant to the factors under 18

U.S.C. § 3553(a)." Fed. R. Crim. P. 32(d)(2)(B), (G) (emphasis added). And USSG § 1B1.3

defines relevant conduct as "*all acts and omissions* committed, aided, abetted, counseled,

commanded, induced, procured, or willfully caused by the defendant." USSG § 1B1.3(a)(1)(A)

(emphasis added).

Unfortunately for Defendant, the information contained in the presentence report and the

confidential memorandum fell well within paragraph ten's broad coverage of information.[15] After

all, Federal Rule of Criminal Procedure 32 calls for information that relates to "any victim."

Nowhere does the rule limit the information to only that of the victim(s) who are the subject of a

defendant's guilty plea. Second, Defendant testified that he had read the entire Plea Agreement

---

[15] The prosecutor's incorporation of some of the information in those sources, therefore, was perfectly proper.

before he signed it, and that he understood every section, which demonstrates his complete understanding that a fully fleshed out version of events and the circumstances surrounding them would therefore be before the Court for sentencing purposes. Plea Hr'g Tr. 11:9-12:6. And if Defendant took issue with any information used at sentencing from the presentence report, e.g., the detailed description of events, multiple victims, HIV status and contraction date, [16] he could have objected to the report and confidential memorandum within the fourteen-day time period. Instead, Defendant—through counsel—informed the Court on the record that he did objection to the presentence report's factual findings.[17] Sntc'g Tr., 2:13-20. Furthermore, during his own articulate and relatively lengthy allocution at sentencing, Defendant breathed not a word of objection or dissent to any of the information he complains of so vigorously in the instant Motion. *See* Sntc'g Tr., 15:6-16:11.

Finally, Defendant's assertion that the Government was required to establish that he was a sexual predator before referring to him as one at sentencing finds no support in the law. Defendant seems to argue that, before it could tag him with that label, the government was required to establish that he was a sexual predator in accordance with 18 U.S.C. § 4248. Mot. at 21. But that section merely authorizes the Director of the Bureau of Prisons ("BOP") to certify individuals already in the custody of the BOP for civil commitment as a sexually dangerous person. *See* 18

---

[16] Defendant also argued that, in addition to his HIV diagnosis being improperly before the Court, the prosecutor was also required to prove that Defendant had the disease at the time of the criminal conduct in question. Mot. 21-22. The fact that Defendant is HIV positive, however, was not the decisive factor in the sentencing judge's decision. *See* Sntc'g Tr., 17:1-18:25. Rather it was but one of many considerations. *Id.* Moreover, the confidential memorandum states that Defendant informed probation that he had been diagnosed with HIV in 2006. *See supra*, § I.D. In addition, Defendant notified the Court of his diagnosis at the plea hearing. Plea Hr'g Tr. 7:1-5. Contrary to Defendant's assertion that he had only recently found out of his diagnosis, the record—established by Defendant's admissions as reported in in the confidential memorandum and made on the record at the plea hearing—directly contradicts that assertion and indicates that he had HIV at the time of his criminal conduct in this case.

[17] The Defendant does not argue that his counsel was deficient for failing to object to the presentence report.

U.S.C. § 4248, *et seq.*  Nowhere does that section, however, mention or define the term "sexual predator."  Nor does that section limit or even apply to the use of that term at a sentencing hearing.  Simply put, habeas relief cannot be granted simply because a defendant—who pled guilty to sexual-based crimes against a minor after having done prison time for similar conduct—does not like being labeled as a sexual predator.  That label was a fair inference from all of the facts before the Court at sentencing.  Furthermore, it is extraordinarily unlikely that such a label had any unfair impact on a veteran trial judge who has been imposing sentences in felony cases for more than twenty years.

In sum and substance, the presentence report properly included a detailed narrative that described how the crime was perpetrated, the other victims involved, and Defendant's HIV status.[18]  And this report was in turn appropriately used by the prosecution during sentencing.  Therefore, not only did the prosecution comply with the terms of the Plea Agreement, Defendant's testimony demonstrated that he understood paragraph 10 of the Plea Agreement at the time of his guilty plea.  It must follow, then, that Defendant's sentencing counsel, Mr. Granberg, was not required to object to the prosecutor's conduct nor statements made by the sentencing judge—and that he therefore acted reasonably by not objecting to conduct or statements that were not objectionable.  Because the Government did not breach the Plea Agreement and Mr. Granberg did not act unreasonably at the sentencing hearing, it also follows that Defendant cannot establish that he suffered any prejudice.  In such an instance, namely when "the basis for the ineffective assistance claim is the failure to raise an issue, [this Court] must look to the merits of the omitted issue."  *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) (citation omitted).  And "[i]f

---

[18] Defendant incorrectly stated that the prosecutor provided the Court with information regarding his HIV diagnosis. In truth, the Court, and not the prosecutor, referred to the confidential memorandum that disclosed his diagnosis [EFC 36].  *See* Sntc'g Tr., 15:21.  Furthermore, as mentioned, Defendant stated on the record at the plea hearing that he had been diagnosed with HIV.  *See supra* note 16.

the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance." *Id.* Consequently, this Court recommends that all of Defendant's claims relating to his sentencing counsel, Mr. Granberg, be denied.

## VI. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion be **DENIED** and this case **DISMISSED WITH PREJUDICE.**

The Court further recommends that, pursuant to Rule 11(a) of the Rules Governing Section 2255 cases, a certificate of appealability be **DENIED**.

**SO RECOMMENDED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**